## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROCHELLE QUILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-768-SLP |
| | ) | |
| STATE OF OKLAHOMA, ex rel., | ) | |
| THE OKLAHOMA INDIGENT DEFENSE | ) | |
| SYSTEM, a statutory state agency, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT
## OF DEFENDANT OKLAHOMA INDIGENT DEFENSE SYSTEM

---

Robert S. Lafferrandre, OBA No. 11897
Randall J. Wood, OBA No. 10531
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma  73106
Telephone:  (405) 235-1611
Facsimile:   (405) 235-2904
rlafferrandre@piercecouch.com
rwood@piercecouch.com
jdark@piercecouch.com
***Attorneys for Defendant OIDS***

**March 1, 2019**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

LIST OF EXHIBITS ......................................................................................... vii

I.    STATEMENT OF CASE ............................................................................ 1

II.   STATEMENT OF UNDISPUTED FACTS ............................................... 4

      Background Information Regarding OIDS ............................................... 4

      Plaintiff is Hired at OIDS ....................................................................... 4

      Plaintiff Commits Significant Budget Error, Fails to Notify
      Upper Management and Attempts to Conceal Error ............................... 5

      Plaintiff's Additional Poor Work Performance at OIDS ...................... 11

      Plaintiff is Terminated for Poor Work Performance and Misconduct ............... 12

III.  ARGUMENT AND AUTHORITIES ...................................................... 13

      A.   Legal Standard for Summary Judgment ................................. 13

      B.   Plaintiff has not Established a Prima Facie Case
          of Title VII Race Discrimination ............................................. 14

      C.   Plaintiff has not Established a Prima Facie Case
          of Title VII Race Retaliation ................................................... 17

          1.   Plaintiff did not engage in protected activity ................ 17

          2.   There is no causal connection between the purported
                protected activity and Plaintiff's termination ................ 18

      D.   Plaintiff has not Established a Prima Facie Case of
          OADA Disability Discrimination ............................................. 19

          1.   Plaintiff is not disabled under the OADA .................... 21

i

2.   Plaintiff cannot show she was perceived as having a disability ...................................................................... 21

3.   Plaintiff was not able to perform the essential functions of her job......................................................... 22

4.   Plaintiff has not established she suffered an adverse employment decision because of her perceived disability ....................................................................... 23

IV.   PLAINTIFF WAS TERMINATED FOR LEGITIMATE NON-DISCRIMINATORY AND NON-RETALIATORY REASONS ......................23

V.   PLAINTIFF CANNOT SHOW PRETEXT...................................................26

VI.   CONCLUSION.............................................................................. 28

CERTIFICATE OF SERVICE ......................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. U.S. West Communications, Inc.*,
  181 F.Supp.2d 1189 (D.Colo. 2001) ............................................................... 23

*Bennett v. Windstream Commc'ns, Inc.*,
  792 F.3d 1261 (10th Cir. 2015) ..................................................................... 18

*Bones v. Honeywell Int'l, Inc.*,
  366 F.3d 869 (10th Cir, 2004) ........................................................................ 18

*Boyles v. AG Equipment Co.*,
  506 F.Supp.2d 809 (N.D. Okla. 2007) ........................................................... 13

*Branson v. Price River Coal Co.*,
  *853 F.2d 768 (10th Cir. 1988)* ...................................................................... 27

*Brown v. Ill. Dep't of Natural,Res.*,
  499 F.3d 675 (7th Cir. 2007) ......................................................................... 27

*Byorick v. Cas, Inc.*, 14-CV-2200-WJM-KMT,
  2016 WL 8469748 (D.Colo. July 18, 2016) ................................................... 19

*Conner v. Schnuck Markets, Inc.*,
  121 F.3d 1390 (10th Cir. 1997) ..................................................................... 19

*Doyal v. Oklahoma Heart, Inc.*,
  213 F.3d 492 (10th Cir. 2000) ....................................................................... 21

*E.E.O.C. v. Flasher Co.*,
  986 F.2d 1312 (10th Cir. 1992) ..................................................................... 26

*E.E.O.C. v. PVNF, LLC*,
  487 F.3d 790 (10th Cir. 2007) ....................................................................... 16

*EEOC v. Burlington Northern & Santa Fe Railway Co.*,
  406 F.Supp.2d 1228 (W.D. Okla. 2005) ......................................................... 13

*Fallis v. Kerr McGee Corp.*,
   944 F.2d 743 (10th Cir. 1991)............................................................24, 25

*Fischer v. Avanade, Inc.*,
   519 F.3d 393 (7th Cir. 2008) 519 F.3d ......................................................27

*Goodwin v. Gen. Motors*,
   275 F.3d 1005 (10th Cir. 2012)..................................................................15

*Hamilton v. Okla. City Univ.*,
   911 F.Supp.2d 1199 (W.D. Okla. 2012) ......................................................20

*Hobbs v. City of Chicago*,
   573 F.3d 454  (7th Cir. July 21, 2009)........................................................27

*Hysten v. Burlington Northern Santa Fe Ry. Co.*,
   415 Fed.Appx. 897 (10th Cir. 2011) ...........................................................16

*Johnson v. Kroger Co.*,
   319 F.3d 858 (6th Cir. 2003)......................................................................27

*Johnson v. Sedwick County Sheriff's Dep't*,
   461 Fed.Appx. 756 (10th Cir. 2012) ...........................................................21

*Jones v. Denver Post Corp.*,
   203 F.3d 748 (10th Cir. 2000).....................................................................14

*Justice v. Crown Cork & Seal Co.*,
   527 F.3d 1080 (10th Cir. 2008)...................................................................20

*Kendrick v. Penske Transp. Servs., Inc.*,
   220 F.3d 1220 (10th Cir. 2000)...................................................................26

*Keri v. Bd. of Trs. of Purdue Univ.*,
   458 F.3d 620 (7th Cir. 2006).......................................................................27

*Khalik v. United Air Lines*,
   671 F.3d 1188 (10th Cir. 2012)........................................................14, 15, 17

*Manzer v. Diamond Shamrock Chems. Co.*,
   29 F.3d 1078 (6th Cir. 1994).......................................................................27

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ...................................................................................20

iv

*Metzler v. Fed. Home Loan Bank of Topeka*,
    464 F.3d 1164 (10th Cir. 2006) ..................................................................... 20

*Morgan v. Hilti, Inc.*,
    108 F.3d 1319 (10th Cir. 1997) ............................................................... 20, 26

*Panis v. Mission Hills Bank, N.A.*,
    60 F.3d 1486 (10th Cir. 1995) ...................................................................... 27

*Rivera v. City & County of Denver*,
    365 F.3d 912 (10th Cir. 2004) ...................................................................... 26

*Rumsey v. ONEOK, Inc.*,
    CIV-05-1136-F, 2006 WL 3612205 (W.D. Okla. 2006) ............................. 14

*Russell v. Phillips 66 Company*,
    184 F.Supp.3d 1258 (N.D. OK 2016) .......................................................... 21

*Somoza v. Univ. of Denver*,
    513 F.3d 1206 (10th Cir. 2008) .................................................................... 17

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993) ............................................................................... 23, 27

*Sutton v. United Air Lines, Inc.*,
    527 U.S. 471 (1999) ..................................................................................... 22

*Tex. Dept. of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981) ..................................................................................... 24

*Timmerman v. U.S. Bank, N.A.*,
    483 F.3d 1106 (10th Cir. 2007) .................................................................... 26

*Twigg v. Hawker Beechcraft Corp.*,
    659 F.3d 987, (10th Cir. 2011) ..................................................................... 17

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ..................................................................................... 18

*Ward v. Jewell*,
    772 F.3d (10th Cir. 2014) ............................................................................. 18

*Winkel v. Kennecott Holdings Corp.*,
    3 Fed.Appx. 697 (10th Cir. 2001) ................................................................ 23

*Young v. Dillon Cos.*,
    468 F.3d 1243 (10th Cir. 2006) ..................................................................... 27

*Zokari v. Gates*,
    561 F.3d 1076 (10th Cir. 2009) ..................................................................... 19

## **Statutes**

42 U.S.C. §12102(3)(A) .................................................................................... 22

Pub. L. No. 110-325, 122 Stat. 3553 ................................................................ 21

## **Rules**

Rule 56 of the Federal Rules of Civil Procedure ................................................. 1

## <u>LIST OF EXHIBITS</u>

1.      OIDS Policy

2.      Deposition of Craig Sutter

3.      Deposition of Joe Robertson

4.      Affidavit of Craig Sutter

5.      Report of Kenneth Klingenberg

6.      OIDS Emails and Memos

7.      Deposition of Plaintiff

8.      Ex. 59 to Plaintiff's Deposition

9.      OIDS Position Statement

10.     Deposition of Angela Cole

11.     Deposition of Stephanie Wessler

**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT
OF DEFENDANT OKLAHOMA INDIGENT DEFENSE SYSTEM**

COMES NOW Defendant, State of Oklahoma, ex rel., The Oklahoma Indigent Defense System, and pursuant to Rule 56 of the Federal Rules of Civil Procedure respectfully moves for summary judgment on all claims asserted by the Plaintiff Rochelle Quillman. In support of this Motion, Defendant OIDS submits the following brief in support:

## I.      STATEMENT OF CASE

The Oklahoma Indigent Defense System ("OIDS") is a statutory agency of the State of Oklahoma which provides trial, appellate and post-conviction criminal defense services to indigent defendants across the State. OIDS is responsible for the defense of all adult and juvenile indigents in 75 counties at the trial and appellate level (and in certain circumstances all 77 counties on appeal). During fiscal year 2016 (July 1, 2015 through June 30, 2016), the agency provided legal representation in over 58,000 cases through staff attorneys and private contract counsel. The agency consists of three program areas: General Operations, Trial, and Appellate Programs. The Trial Program consists of the Non-Capital Trial Division and two capital trial divisions: Capital Trial Norman and Capital Trial Tulsa.  The Appellate Program contains the General Appeals Division, the Homicide Direct Appeals Division and the Capital Post-Conviction Division. The agency's Executive Division is responsible for general administration of the agency. Within the Executive Division and under the supervision of the Chief Administrative Officer, is the position of Chief Finance Officer ("CFO").

Plaintiff Rochelle Quillman was hired by OIDS in January of 2014 as the CFO. During the interview process, the applicants were narrowed down to Quillman, an African-American female, and a Caucasian female and, ultimately, Quillman was hired. Quillman was hired at-will and was not a contract employee. As CFO, Quillman reported directly to Angela Cole-Cockings ("Cole"), then Chief Administrative Officer ("CAO") and Joe Robertson, then Executive Director. Though not a direct supervisor of Quillman, then-Deputy Director Craig Sutter ("Sutter") was also involved in overseeing the agency's management, including the finance department and its submissions. As CFO, Quillman was the supervisor of several employees and was largely responsible for, *inter alia*, preparing the agency's budget for the upcoming fiscal year, paying vendor invoices, and reimbursing attorneys' expense vouchers. As CFO, it was expected that Quillman followed generally accepted accounting standards and maintain accurate figures.

During a time that can only be described as a fiscal crisis when the agency's budget had already been slashed by over $2,000,000 (due to a statewide revenue and appropriation reduction by the Legislature), Quillman committed a grievous error. While preparing the budget for Fiscal Year 2017, Quillman double-counted more than $500,000 in the budget. This gave the administration the false belief that the agency had more than half-a-million dollars in its coffers that did not exist. Upon discovering her mistake, instead of admitting it and working towards a solution, Quillman tried to cover up her blunder, demonstrating that not only could she not be trusted with basic accounting practices, but agency management could no longer trust anything she said or did.

2

This grave error and attempted cover-up was discovered in August of 2016 while Quillman was out on a weeks-long vacation. When she returned to the office on August 11, 2016, Cole and Sutter met with her to discuss the issue and try to triage the dire financial situation. On or about August 12, 2016, Cole and Sutter told Robertson that Quillman needed to be fired for this offense in conjunction with several other examples of poor work performance. Robertson agreed and advised them to prepare a letter outlining the reasons for recommending termination. On August 16, 2016, Cole and Sutter began drafting a letter to Robertson recommending the termination of Quillman. On August 18, 2016, six days after the decision to terminate had already been made, Quillman sent Robertson a letter complaining about alleged harassment, discrimination and bullying at the office. On August 19, 2016, Sutter and Cole sent Robertson the final letter recommending termination. Robertson officially terminated Quillman's employment on August 22, 2016.

Plaintiff now tries to re-write history, claiming she was wrongfully terminated for the following reasons: (1) race discrimination in violation of Title VII; (2) retaliation after she complained of racial discrimination in violation of Title VII; and (3) discrimination based on a disability under the OADA. (Doc. 1; see also Doc. 12 dismissing Plaintiff's FMLA claim). As the ample evidence in the record demonstrates, Quillman was terminated for her inability to properly perform her basic job functions as the CFO, as well as her misconduct. These are legitimate non-discriminatory and non-retaliatory reasons and Plaintiff can offer no evidence of pretext.

Therefore, for these reasons and as further discussed herein, Defendant OIDS is entitled to summary judgment on all of Plaintiff's claims.

## II.     STATEMENT OF UNDISPUTED FACTS

### Background Information Regarding OIDS

1.     OIDS maintains a policy that it will not and does not discriminate based on, *inter alia*, an employee or prospective employee's race or disability. (Exh. 1 - OIDS Policy, p. OIDS 651).

2.     OIDS has employed numerous African-Americans. (Exh. 2 - Depo of Sutter, p. 15, lines 15-20; Exh. 3 - Depo of Robertson, p. 19, lines 3-18).

3.     During 2016, OIDS' allocations had been reduced approximately by $1.1 million.  These reductions were annualized in the agency's fiscal year 2017 appropriation, resulting in the loss of an additional $1.1 million to start the next fiscal year (Exh. 2 - Depo of Sutter, p. 25, lines 9-15; Exh. 4 - Affidavit of Craig Sutter, Paragraph No. 5).

4.     The finance department and budget process therein are vital to the agency's function; an erroneous budget can result in the agency failing to meet its statutory requirements. (Exh. 5 - Report of Klingenberg, p. 2).

### Plaintiff is Hired at OIDS

5.     Plaintiff, a black female, was hired as Chief Finance Officer ("CFO") on January 6, 2014, and assigned to work in the Executive Division of OIDS. (Exh. 6 - Employee Sheet, OIDS 539-540; Exh. 3 - Depo of Robertson, p. 14, lines 12-17).

6.     Plaintiff has no reason to believe she was discriminated against during the interview or hiring process. (Exh. 7 - Depo of Plaintiff, pp. 87-89).

7.    As CFO of the agency, Plaintiff was tasked with preparing the budget; that was a very important part of her job. She also prepared expense reports and reimbursed employees for travel expenses. (Exh. 7 - Depo of Plaintiff, pp. 104-105).

8.    The CFO position required Plaintiff to follow generally accepted accounting standards, which included being accurate in her budget calculations. (Exh. 7 - Depo of Plaintiff, pp. 106-107).

9.    During her employment, Plaintiff advised Ms. Cole that she needed to occasionally leave work to attend medical appointments; Ms. Cole repeatedly approved Plaintiff's leave and expressed concern in her well-being. (Exh. 6 - Email OIDS 121, Exh. 6 - Email OIDS 123; Exh. 7 - Depo of Plaintiff, pp. 156-158, 166).

**Plaintiff Commits Significant Budget Error, Fails to Notify Upper Management and Attempts to Conceal Error**

10.   On May 25, 2016, Plaintiff submitted her starting figures for the proposed FY 2017 budget work program. The initial Funding estimates she prepared indicated the following:

| Account No. | Title of Account | Amount |
| --- | --- | --- |
| 19611 | FY 2016 Carryover | $293,354 |
| 19701 | General Appropriations | $14,954,141 |
| 20000 | Revolving (Collections) | $1,724,975 |
| 23000 | 10% Retained Funds | $885,020 |
| | Total: | $17,857,490 |

She advised that "522,620 of the amounts above will be transferred from [account] 19701 to [account] 23000." (Exh. 6 - OIDS 009-010).

Account No. 19701, entitled "General Appropriations," represents the total appropriation to the agency from the Oklahoma State Legislature for Fiscal Year 2017 (July 1, 2016 through June 30, 2017).  (Exh. 4 - Affidavit of Sutter, par. 7).

Account No. 23000, entitled "10% Retained Funds," is a revolving fund created by 22 O.S. § 1369, designated by statute as the "contract retention revolving fund."  Title 22 O.S. § 1355.8 requires the withholding of 10% of payments over the course of the fiscal year for all fiscal year non-capital trial contracts awarded under that section. These funds are deposited in the "contract retention revolving fund," and are disbursed upon completion of all cases assigned throughout the fiscal year pursuant to § 1355.8(G).  This revolving fund consists of 10% of the non-capital trial fiscal year contracts awarded for the new fiscal year, in addition to the 10% funding withheld from the previous fiscal years where cases assigned under the contracts have not been completed.  Because the total amount of contracts for fiscal year 2017 awarded by the OIDS board amounted to $5,226,200, the amount to be transferred to the 23000 revolving fund from the 19701 general appropriation fund was 10%, or $522,620. The fund already contained $885,020, representing the amount which had not been drawn down from then current (FY2016) and previous fiscal year contracts due to cases which were still pending.  This revolving fund does not represent an additional source of funding to the agency, but can be fairly characterized as a "trust account" containing funds due and owing to contract attorneys upon case completion. (Exh. 4 - Affidavit of Sutter, par. 8).

Account No. 20000, entitled "Revolving Fund Collections," is another OIDS revolving fund created by 22 O.S. § 1355.14.  These funds are utilized to fund agency

operations.  Plaintiff's initial calculation of this amount, $1,724,975, included the fund's cash balance at the time, in addition to her projection of funds to be forwarded by the Oklahoma court clerks upon payment by agency clients assessed representation costs under 22 O.S. § 1355.14 during the upcoming fiscal year.  (Exh. 4 - Affidavit of Sutter, par. 9).

Account No. 19611, entitled "FY 16 Carryover into FY17," represents estimated carryover of appropriated funds from the ending fiscal year.  These funds cannot be included in the budget provided to OMES for approval.  (See Exh. 4 - Affidavit of Sutter, par. 10).

11.  On June 29, 2016, Plaintiff submitted copies of the updated FY 2017 Budget Work Program to Robertson, Sutter, and Cole for their review and final approval, containing the following sources of funds:

| Account No. | Title of Account | Amount |
|---|---|---|
| 19611 | FY 2016 Carryover | - |
| 19701 | General Appropriations | $14,954,141 |
| 20000 | Revolving (Collections) | $1,986,203 |
| 23000 | 10% Retained Funds | $1,405,723 |
| | Total: | $18,346,066 |

(Exh. 8 - Ex. 59 to Plaintiff's depo). Plaintiff calculated the amount available in the 20000 revolving fund of $1,986,203, comprised of $603,534 cash balance in addition to projected collections from Oklahoma district court clerks during FY 2017 of $1,382,669. Plaintiff's projected collections were calculated as an average of FY 2014, FY 2015 and FY 2016 total collections.  (Exh. 4 - Affidavit of Sutter, par. 11-13).

The budgeted amount for Account 23000 was $1,405,723, comprised of $522,620, or 10% of the $5,226,200 of the contracts awarded for FY 2017, in addition to the remaining $883,103 in the account for pending non-capital trial contract cases from FY 2016 and prior fiscal years.  The increase of $522,620 in Account 23000 required a debit to (and transfer from) Account 16701 in that same amount.  However, Plaintiff failed to debit that amount accordingly, counting the $522,620 figure twice in both accounts, thereby resulting in an agency budget overstating available funds of $522,620 which the agency did not have.  No one in agency management caught Plaintiff's error at this time. (Exh. 4 - Affidavit of Sutter, par. 15; see also Exh. 8 (Ex. 59 to Quillman's depo); Exh. 5 - Report of Klingenberg, pp. 3-4).

12.   Deputy Director Sutter sent an email to Plaintiff on July 5, 2016, stating that her Budget Work Program was approved, with the exception that she needed to transfer $10,000 into "non-capital conflicts." Plaintiff advised she would make those changes. (Exh. 4 - Affidavit of Sutter, par. 16; Exh. 6 - OIDS 113).

13.   On July 8, 2016, Plaintiff sent an email to Robertson, Sutter, and Cole, stating that she made the $10,000.00 adjustment as requested and other minor adjustments, noting the only change to be an increase of $5,200:

| | |
|---|---|
| **From:** | Rochelle Quillman |
| **Sent:** | Friday, July 08, 2016 4:31 PM |
| **To:** | Angie Cole; Joe Robertson; Craig Sutter |
| **Subject:** | Budget Work Program Submission |
| **Attachments:** | BWP_Budget_Summary as of 07_08_16.pdf |

I have attached any updates that I have made to the Budget Work Program.  I made an adjustment of $10,000 for Conflicts and made some minor adjustments to expenditures for the regional office.  The budget increased by a net of $5,200 due to these changes.

Rochelle Quillman, CPA
Chief Finance Officer
Oklahoma Indigent Defense System
405-801-2607
Rochelle.quillman@oids.ok.gov

In reality, Plaintiff had (1) corrected her earlier error of failing to debit Account 19701 in the amount of $522,620 when crediting Account 23000 - by now debiting Account 19701 by $522,620, and (2) increased her original 20000 Revolving/Collections fund estimate by $527,820 (the referenced $522,620 and an additional $5,200 from the regional offices budgets) from $1,986,203 to $2,514,023, as follows:

| Account No. | Title of Account | Amount |
|---|---|---|
| 19611 | FY 2016 Carryover | - |
| 19701 | General Appropriations | $14,431,521 |
| 20000 | Revolving (Collections) | $2,514,023 |
| 23000 | 10% Retained Funds | $1,405,723 |
| | Total: | $18,351,266 |

(Exh. 6 - OIDS 113, Exh. 6 - OIDS 14-15; Exh. 2 - Depo of Sutter, pp. 20-23; Exh. 4 - Affidavit of Sutter, par. 17-18; Exh. 5 - Report of Klingenberg, p. 4).

14. Plaintiff failed to notify or disclose to management of her own discovery of the initial $522,000 error in failing to debit the 19701 account when crediting 23000 account by that same amount, and failed to notify management that in order to balance a budget that was already overstated by over $522,000, she grossly inflated her 20000 fund

collection projections by an excess of $500,000. Plaintiff misled and misdirected management by stating that she made "minor adjustments" to the budget work program, knowing she made a half-million-dollar error and attempted to cover it up.  (Exh. 4 - Affidavit of Sutter, par. 19; Exh. 5 - Report of Klingenberg, p. 4).

15.  Plaintiff took an extended vacation from July 21, 2016 until August 11, 2016. (Exh. 6 - OIDS 68, 56).

16.  While Plaintiff was away on her extended vacation, Assistant Finance Officer Stephanie Wessler worked on the budget. She was unable to reconcile certain accounts and ultimately determined that she had been working with the earlier version of the budget and budget summary. She then realized Plaintiff had "fixed" the error from the original version by adding the additional $527,820 to the 20000 Revolving account. Wessler advised management of the issue. It became apparent at that time that the budget prepared by Plaintiff overstated revenues and appropriated funds by over a half-million dollars. (Exh. 2 - Depo of Sutter, pp. 20-23; p. 26, line 14 through p. 27, line 14; Exh. 9 - OIDS Position Statement, p. 3).  (Exh. 2 - Depo of Sutter, p. 20, lines 16-23; p. 28, lines 10-24; Exh. 4 - Affidavit of Sutter, par. 19; Exh. 5 - Report of Klingenberg, p. 4).

17.  The unexplained $520,000 increase in the 20000 account would have required an increase in representation cost collections during the new fiscal year to approximately $2,000,000. Plaintiff's inflated number had no historical basis and, more importantly, directly contradicted Plaintiff's own calculation that new 20000 account collections during the fiscal year would be less than $1.4 million. (Exh. 4 - Affidavit of Sutter, par. 20; Exh. 5 - Expert Report of Klingenberg, p. 4).

18.  On August 11, 2016, Sutter met with Cole and Plaintiff to discuss the serious problems with the budget she had prepared. (Exh. 2 - Depo of Sutter, p. 20, line 5 through p. 23).

### **Plaintiff's Additional Poor Work Performance at OIDS**

19.  In the spring of 2016, it came to management's attention that the finance department had not paid multiple vendor invoices on time. (Exh. 6 - OIDS 271-272; Exh. 6 - OIDS 187-191; Exh. 3 - Depo of Robertson, pp. 25-26).

20.  Plaintiff also failed to process more than 50 attorney travel vouchers in a timely manner, letting more than a month go by before issuing reimbursements. (Exh. 6 - Email OIDS 285-287; Exh. 3 - Depo of Robertson, pp. 25-26).

21.  Assistant Finance Officer Sharon Farmer advised Cole that Plaintiff had mismanaged the Finance Department since she had been hired and her assistant officers were fed up with her performance. (Exh. 6 - Email OIDS 285-287).

22.  Plaintiff's superiors had repeated issues with Plaintiff's failures to communicate and engage in teamwork; she avoided face-to-face discussions and relied only on email. (Exh. 6 - Termination Memo OIDS 32-34).

23.  Plaintiff does not dispute that her superiors were advised she was delinquent on paying vendor bills and entering vouchers and that she was chronically behind on her work. Plaintiff further agreed that her superiors had an obligation to listen to complaints made about her. (Exh. 7 - Depo of Plaintiff, pp. 233, 221-225).

**Plaintiff is Terminated for Poor Work Performance and Misconduct**

24.  On August 12, 2016, Sutter and Cole spoke with Robertson about the budget issue. They were upset and concerned about what needed to be done to get the budget in order. They decided they could no longer trust Plaintiff and both Robertson and Sutter concluded then she needed to be terminated. Robertson directed Sutter and Cole to prepare a letter requesting her termination. (Exh. 2 - Depo of Sutter, p. 30, line 15, through p. 31, line 8).

25.  Robertson's decision to terminate Plaintiff was based on repeated poor work performance, including her failure to timely reimburse attorney travel expenses; her failure to timely pay vendor invoices; and the obvious half-a-million-dollar budgeting error. (Exh. 3 - Depo of Robertson, pp. 25-26).

26.  On August 16, 2016, Sutter and Cole begin preparing a draft of the letter recommending termination of Plaintiff. (Exh. 6 - OIDS 43-45; Exh. 2 - Depo of Sutter, p. 34, lines 21-25).

27.  On August 18, 2016, Plaintiff sent via email a letter to Robertson, which is dated August 17, 2016, complaining of alleged mistreatment by Sutter and Cole. (Exh. 6 - OIDS 421-424).

28.  The decision to terminate Plaintiff had been made prior to Robertson receiving this complaint letter. (Exh. 3 - Depo of Robertson, p. 26, lines 22-23, p. 27, lines 2-8).

29. The final letter recommending termination was submitted to Robertson on August 19, 2016 and outlined the numerous deficiencies with Plaintiff's work performance. (Exh. 6 - OIDS 32-34).

30. On August 22, 2016, Sutter and Cole formally presented Plaintiff with her termination letter. (Exh. 2 - Depo of Sutter, pp. 16-17).

31. Contrary to the allegations within her lawsuit, at the time the decision was made to terminate her, Robertson, Sutter and Cole did not know Plaintiff had allegedly been diagnosed with any sort of disability, including anxiety or depression. (Exh. 2 - Depo of Sutter, p. 18; Exh. 3 - Depo of Robertson, pp. 57-58; Exh. 10 - Depo of Cole, p. 38, lines 10-17).

## III.   ARGUMENTS AND AUTHORITIES

### A.  Legal Standard for Summary Judgment

Rule 56(C) of the Federal Rules of Civil Procedure holds that a party is entitled to an order granting summary judgment if the movant shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that no genuine issue of material fact exists. *Boyles v. AG Equipment Co.*, 506 F.Supp.2d 809, 815 (N.D. Okla. 2007). The party seeking to overcome a motion for summary judgment must present more than a "'mere scintilla" of evidence; the evidence must be such that a "reasonable jury could return a verdict for the non-moving party.'" *EEOC v. Burlington Northern & Santa Fe Railway Co.*, 406 F.Supp.2d 1228, 1230 (W.D. Okla. 2005). Once the moving party has met his or her burden, the opposing party must provide specific evidence, not mere

13

allegations or denials, that dictate a trial. *Rumsey v. ONEOK, Inc.*, CIV-05-1136-F, 2006 WL 3612205, at *2 (W.D. Okla. 2006).

### B. Plaintiff has not Established a Prima Facie Case of Title VII Race Discrimination

In her Complaint, Plaintiff alleged that she was terminated in violation of Title VII based on her race and her alleged complaints of race discrimination. (Doc. 1, pp. 6-7). Plaintiff does not provide any examples of this alleged racial discrimination; there are no alleged discriminatory remarks made by superiors and no showing of preferential treatment to others not in her class. Instead, it appears Plaintiff is trying to advance a *res ipsa loquitur* argument: that since she is African-American and since she was terminated, her race must have been a factor. This is simply not enough to succeed under Title VII.

For a discrimination claim, Plaintiff bears the burden of proving her prima facie case. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green . . .*" *Khalik*, 671 F.3d at 1192 (citation omitted). "A plaintiff may prove intentional discrimination either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing the employer's proffered explanation is unworthy of credence." *Jones v. Denver Post Corp.*, 203 F.3d 748, 752 (10th Cir. 2000). Plaintiff has no direct evidence of discrimination by OIDS; therefore, the *McDonnell Douglas* framework applies.

*McDonnell Douglas* involves a familiar three-step analysis. First, Plaintiff must establish her prima facie case showing that (1) she belonged to a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class. *Khalik*, 671 F.3d at 1192. If Plaintiff establishes her prima facie case, then the burden "shifts to the Defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.; see also Goodwin v. Gen. Motors*, 275 F.3d 1005, 1012 (10th Cir. 2012).

OIDS does not contest the first two elements of Plaintiff's prima facie case: she is a member of a protected class in that she is African-American (Fact No. 5) and she was terminated from her employment. (Fact No. 30). Plaintiff, however, cannot establish that she was qualified for the position at issue because she was unable to perform the duties of her position to the level of skill and proficiency required. (See Fact Nos. 10-23). This is discussed at length *supra* with regard to OIDS' legitimate and non-discriminatory reasons for terminating Plaintiff.

Further, there is not a single bit of evidence in the record to indicate, much less establish, that she was treated less favorably than others not in the protected class. Plaintiff's Complaint alleges racial discrimination; however, there is not a single piece of evidence in the record to corroborate this claim. In fact, the undisputed facts show the opposite. Plaintiff admitted that she was not discriminated based on her race when she was interviewed and hired at OIDS. (Exh. 7 - Depo of Plaintiff, pp. 87-90). Plaintiff herself testified that she "[did not] know" if Sharon Farmer or Stephanie Wessler had

15

ever discriminated against her based on her race or other protected class. (Exh. 7 - Depo of Plaintiff, p. 232, lines 17-24). Additionally, Ms. Cole and Mr. Sutter both testified that they personally hired at least two African-American employees, including Plaintiff, and that several African-American employees work or have worked there over the years. (Exh. 10 - Depo of Cole, pp. 30-31; Exh. 2 - Depo of Sutter, p. 15, lines 15-20; see also Exh. 3 - Depo of Robertson, p. 19, lines 3-20; Fact No. 2). There is absolutely no evidence that OIDS or any of its management have treated minority employees, including Plaintiff, differently than Caucasians. (Exh. 3 - Depo of Robertson, p. 18, lines 8-11; Exh. 2 - Depo of Sutter, p. 15, lines 11-14; p. 33, lines 5-10; Exh. 11 - Depo of Wessler, p. 12, lines 8-12).

In order to create an inference otherwise, Plaintiff must demonstrate that other "similarly situated" employees outside her class were treated differently than she. *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 415 Fed.Appx. 897, 907 (10th Cir. 2011); *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 801-02 (10th Cir. 2007). In the Tenth Circuit, employees are considered "similarly situated when they deal with the same supervisor . . . and have engaged in conduct of comparable seriousness." *Hysten*, 415 Fed.Appx. at 907, quoting *PVNF, LLC*, 487 F.3d at 801. Plaintiff can point to no similarly situated and comparable Caucasian employee who committed similar errors on the job who was treated differently than she.

Bald accusations alone, such as the ones put forth by Plaintiff in this case, will not allow Plaintiff to survive summary judgment. Thus, without any evidence of

16

discrimination based on her race, Plaintiff's Title VII claim against OIDS fails as a matter of law. Defendant OIDS is, accordingly, entitled to summary judgment.

### C. Plaintiff has not Established a Prima Facie Case of Title VII Race Retaliation

For the retaliation claim, Plaintiff again bears the burden of stating her prima facie case. *Khalik*, 671 F.3d at 1192-93. As there is no direct evidence "that retaliation played a motivating part in the employment decision," Plaintiff must rely on the *McDonnel Douglas* framework. *Id.* at 1192 (*citing Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, (10th Cir. 2011)). To establish her prima facie case, Plaintiff must show "(1) that she engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.* at 1193 (*quoting Twigg*, 659 F.3d at 998). As explained below, Plaintiff cannot state a prima facie case for her retaliation claim. Further, even if she could state a prima facie case for retaliation, as discussed *supra*, OIDS is still entitled to judgment as a matter of law because it can offer and demonstrate "legitimate, non-retaliatory reason[s] for its decision." *Twigg*, 659 F.3d at 998 (*citing Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008)).

### 1. Plaintiff did not engage in protected activity.

Plaintiff cannot state a prima facie case for retaliation under Title VII because she cannot show that she had engaged in a protected activity at the time the decision was made to terminate her employment. Plaintiff submitted the email to Robertson on August

17

18, 2016 complaining of alleged mistreatment by Sutter and Cole. (Fact No. 27-28). This was six (6) days *after* the decision to terminate Plaintiff had been made. (Fact Nos. 24-28). The decision to terminate Plaintiff was based on her repeated poor work performance, discussed at length *supra*, and could not have possibly been motivated by a complaint letter that had not yet even been sent. (See Fact Nos. 24-28). No reasonable juror could possibly conclude that a decision made on August 12, 2016 could have been based on information not received until August 18, 2016. Accordingly, she has failed to establish that she engaged in protected activity prior to her termination.

### 2. There is no causal connection between the purported protected activity and Plaintiff's termination.

Even if there was some sort of proof Plaintiff engaged in protected activity prior to her termination, there is no evidence of causal connection between the purported activity and the decision to terminate. The burden-shifting framework requires that the plaintiff show that the protected activity was the "but for" cause for the adverse action. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). "The evidence of but-for causation 'must be based on more than mere speculation, conjecture, or surmise.'" *Ward v. Jewell*, 772 F.3d, 1203 (10th Cir. 2014) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir, 2004)). Plaintiff has no evidence showing that *but for* any purported protected activity she engaged in that she would not have been terminated for her poor work performance. First, even considering the facts in the light most favorable to Plaintiff, no jury could conclude that the decision to terminate Plaintiff **six days before**

she even submitted her complaint could be causally connected to her termination. (Fact No. 24-28). "It is well established in the Tenth Circuit that to establish causation in a retaliation claim, the plaintiff 'must show that the individuals who took adverse action against him **knew of** his protected opposition." *Byorick v. Cas, Inc.*, 14-CV-2200-WJM-KMT, 2016 WL 8469748 at *5 (D.Colo. July 18, 2016) (quoting *Zokari v. Gates*, 561 F.3d 1076, 1195 (10th Cir. 2009).

Further, Robertson affirmatively testified that Plaintiff's termination was, in no way, related to this complaint letter and, instead, was a direct result of her poor work performance. (Fact Nos. 25). Plaintiff cannot present any evidence of retaliatory animus on the part of OIDS.

Additionally, the defendant need not provide the absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). As discussed thoroughly herein, OIDS has articulated and presented several legitimate and non-retaliatory reasons for Plaintiff's termination. As she cannot establish her complaint letter was the "but for" cause of her termination, Plaintiff cannot establish her prima facie case and Defendant is entitled to judgment as a matter of law.

### D. Plaintiff has not Established a Prima Facie Case of OADA Disability Discrimination

The Oklahoma Anti-Discrimination Act, 25 O.S. § 1101 *et seq.*, bars employers from engaging in "discriminatory practices," which are defined as:

> "[F][ailing] or refus[ing] to hire, to discharge or otherwise discriminate against an individual with respect to compensation or the terms,

conditions, privileges or responsibilities of employment, **because of** race, color, religion, sex, national origin, age, genetic information or disability."

25 O.S. § 1302(A)(1) (emphasis added).

While case law regarding a disability discrimination claim under solely the OADA and not in conjunction with the ADA is sparse, one can assume that the Court will apply the same prima facie case that is required under the ADA to a claim under the OADA. *See Hamilton v. Okla. City Univ.*, 911 F.Supp.2d 1199, 1206 (W.D. Okla. 2012) (The protections provided by the OADA are co-extensive with the protections provided under the ADA). ADA discrimination cases are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); see also *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

To establish the prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) she is disabled or perceived as disabled as defined by the ADA; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered discrimination as a result of her disability. *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1086 (10th Cir. 2008). If the plaintiff establishes her prima facie case, then the burden shifts to the defendant to offer a legitimate non-discriminatory reason for the employment action. If the defendant satisfies that burden, the plaintiff then has the burden of demonstrating that the defendant's asserted reasons are pretextual. *McDonnell Douglas*, 411 U.S. at 802-03; *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).

### 1. Plaintiff is not disabled under the OADA.

Depression and anxiety "are not per se disabilities, and merely stating that he/she has received a diagnosis of one of these conditions does not establish that a plaintiff is disabled under the ADA." *Russell v. Phillips 66 Company*, 184 F.Supp.3d 1258, 1268 (N.D. OK 2016) (citing *Johnson v. Sedwick County Sheriff's Dep't*, 461 Fed.Appx. 756, 759 (10th Cir. 2012).

To qualify as a disability, the depression and anxiety "must substantially limit the...performance of a major life activity." *Id.* (citing *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000)). According to the ADA Amendments Act, major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, siting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, [and] interacting with others." *Id.* (quoting Pub. L. No. 110-325, 122 Stat. 3553 of the ADA Amendments Act of 2008).

Plaintiff has not established, much less even alleged, that any major life activities are substantially limited for her. She merely claims that "she had depression and anxiety" (Doc. 1, par. 42) and even specifically alleges that she "could perform the essential functions of her job." (Id. at par. 43). As Plaintiff has failed to show she has a qualifying disability under the ADA and, by extension, the OADA, OIDS is entitled to judgment as a matter of law on this claim.

### 2. Plaintiff cannot show she was perceived as having a disability.

Plaintiff also cannot show that she was perceived as having a disability. A person is perceived as having a disability when an employer regards the employee as suffering

from an actual or perceived a physical or mental impairment whether or not it substantially limits his or her ability to work. 42 U.S.C. §12102(3)(A). The United States Code continues on to say that this portion of the ADA does not "apply to impairments that are transitory and minor." Transitory impairments are defined as having "an actual or expected duration of 6 months or less." To succeed on this sub-part of the prima facie case, a plaintiff must establish that the employer mistakenly believed that she had an impairment that substantially limits one or more of her major life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). This part of the test is focused on an employer's subjective state of mind: did the employer mistakenly believe that the plaintiff was substantially limited in performing a major life activity? *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

Plaintiff can cite to absolutely no evidence to show Cole, Sutter, or Robertson were aware of her purported disability or that such alleged disability limited her major life activities. On the contrary, Cole, Sutter, and Robertson all affirmatively testified that they were never aware Plaintiff had been diagnosed with anxiety or depression at the time they decided to terminate her employment from OIDS. (Fact No. 31).

### 3.   Plaintiff was not able to perform the essential functions of her job.

Even if Plaintiff's anxiety and depression constituted a qualifying disability and even if OIDS was aware of the purported disability at the time of her termination, Plaintiff still cannot show she was qualified to perform the essential duties of her job as the Chief Financial Officer. As discussed *supra* herein, Plaintiff committed a grave half-million-dollar error, deliberately tried to cover it up and further performed poorly in her

role. Accordingly, she cannot establish a prima facie case of disability discrimination under the OADA.

> **4. Plaintiff has not established she suffered an adverse employment decision *because of* her perceived disability.**

As stated herein, there is no evidence in the record to indicate that Cole, Sutter, or Robertson were aware of her purported disability at the time they decided to terminate her employment. (Fact No. 31). Plaintiff cannot point to a single shred of evidence to indicate that her purported disability was a factor, much less the motivating factor for her termination. Plaintiff has not established a prima facie case for discrimination based upon any alleged disability; accordingly, OIDS is entitled to summary judgment on this claim.

## IV. PLAINTIFF WAS TERMINATED FOR LEGITIMATE NON-DISCRIMINATORY AND NON-RETALIATORY REASONS

Even if Plaintiff could establish her prima facie case for discrimination and retaliation, which she cannot, Defendant OIDS has produced evidence of several legitimate and non-retaliatory reasons for her discharge. As the undisputed facts show, Plaintiff had significant performance issues, which were in no way related to her race, alleged protected activity, or any alleged disability. It is undisputed that Plaintiff's performance negatively impacted the OIDS Executive Division and was nearly catastrophic to the agency in terms of its budget.

It is important to note at this stage that Defendant's sole burden is to simply articulate the reasons for its actions and the truthfulness of the proffered explanation is assumed as a matter of law. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993); *Winkel v. Kennecott Holdings Corp.*, 3 Fed.Appx. 697, 706-07 (10th Cir. 2001); *Adkins v.*

*U.S. West Communications, Inc.*, 181 F.Supp.2d 1189, 1195 (D.Colo. 2001); *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981) (defendant's burden is of production and not persuasion). An employee's general dispute concerning her job performance, in the absence of any other evidence of discrimination, does not provide a sufficient basis to find discrimination. *See e.g., Fallis v. Kerr McGee Corp.*, 944 F.2d 743, 747 (10th Cir. 1991).

Defendant has met its burden and presented legitimate reasons for its decision. Any and all of these offered reasons for terminating Plaintiff's employment evidence that her termination was not because of her race, alleged protected activity, or alleged disability. As the undisputed facts show, Plaintiff was hired as the CFO to properly oversee the agency's finances, including preparing the budget for upcoming fiscal years, paying vendor invoices, and processing attorney vouchers, all of which must comply with Oklahoma statutes. (Fact No. 4-5, 7). Under Plaintiff's leadership, the finance department had not paid multiple vendor invoices on time (Fact No. 19). Plaintiff failed to process attorney vouchers and issue reimbursements in a timely manner, which impeded the agency's contracts with its attorneys. (Fact No. 20). Several of Plaintiff's subordinates complained to management that Plaintiff had mismanaged the department and working with her was challenging and frustrating, and her superiors experienced the same issues. (Fact No. 21-22). Plaintiff does not dispute these issues occurred and that her superiors were obligated to consider these complaints about her work performance. (Fact No. 23).

Even more significantly, Plaintiff committed a grave blunder during the budget preparation process in the summer of 2016. At the end of May, Plaintiff submitted her

starting figure that indicated $522,620 would be moved from the 19701 account (General Appropriations) to the 23000 account (10% retained funds). (Fact No. 10). At the end of June, Plaintiff submitted updated figures that had credited the 23000 account with the $522,620 of retained funds but ***failed to debit*** the amount from the 19701 account. (Id.) This means the $522,620 was counted **twice** in the budget, but the funds were only there **once.** This was a basic calculation and her inability to do so correctly is unacceptable accounting, especially for a Chief Finance Officer of a state agency. This error could possibly have been forgiven had Plaintiff approached management immediately upon discovering it; instead, she engaged in surreptitious behavior by attempting a cover-up of the mistake. She advised Mr. Sutter that a $10,000 change had been made in July and deliberately withheld the fact that she had debited the $522,620 from the 19701 account and increased the 20000 account (Revolving/Collections fund estimate) by the $522,620 and an additional $5,200 from the regional offices budget. This revision grossly overstated the 20000 fund collection estimates to an amount that had, and never could, be collected. (Fact Nos. 13-14). Luckily, while Plaintiff was on vacation, Ms. Wessler uncovered the issue and the agency was able to scramble and revise the numbers before this flawed budget devastated OIDS.

Not only was Plaintiff's basic accounting error unreasonable, but her deceptive behavior in concealing the error was unacceptable. Coupled with Plaintiff's dilatory payments for vendor invoices and travel reimbursements for attorneys, OIDS simply couldn't afford to keep a liability on staff, especially not in the Chief Finance Officer position.

**V.   PLAINTIFF CANNOT SHOW PRETEXT**

If the Court finds Plaintiff has established her prima facie case and since Defendant has articulated several reasons for her termination, then the burden will shift back to Plaintiff to show Defendant's proffered reasons for termination were pretext. At this stage, she can only withstand summary judgment if she "presents evidence that the defendant's proffered reason for the employment decision was pretextual, i.e., unworthy of belief. *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000).

A plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323). A challenge of pretext requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee. *Kendrick*, 220 F.3d at 1231; see also *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007): "Neither Title VII nor the ADEA prohibits an employer from making hasty decisions that appear harsh; what they forbid are decisions made with discriminatory animus." (citing *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir. 1992).

"The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)(emphasis added). The "honest belief" of the employer is the critical issue: "The

reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Id. citing Branson v. Price River Coal Co.*, *853 F.2d 768, 772 (10th Cir. 1988)*. The plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (alteration in original); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir. 1995) (mere conjecture of pretext by the plaintiff is not enough to survive summary judgment). "The jury may not reject an employer's explanation . . . unless there is a sufficient basis *in the evidence* for doing so." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994); see also *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993): "[A] reason cannot be proved to be 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."[1]

---

[1] Same point confirmed in *Hobbs v. City of Chicago*, 573 F.3d 454 (7th Cir. July 21, 2009): "Our recent Title VII cases explain that a plaintiff demonstrates pretext by showing the employer's proffered nondiscriminatory reason is a lie and the real reason is based on discriminatory intent. See, e.g., *Fischer*, [citing *Fischer v. Avanade, Inc.*, 519 F.3d 393 (7th Cir. 2008)] 519 F.3d at 403; *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007); *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 646 (7th Cir. 2006) ('In a word, the Plaintiff must establish that . . . [the employer's] reasons . . . were merely made up to cover up . . . discriminatory reasons.')."

As previously stated, the focus should always be on establishing that discrimination was <u>the</u> reason for the adverse employment action against the employee. There is simply no evidence in the record of even an inference of pretext. Instead, the record is rife with examples of Plaintiff's poor work performance, including the significant half-million-dollar inaccuracy, all of which, or any of which on its own, constitutes good cause for her termination.

## VI.   CONCLUSION

Plaintiff has failed to meet her burden of proof on all three claims she has made against OIDS in this lawsuit. First, she has produced no evidence to demonstrate she was treated any differently, much less not as favorably, as her Caucasian co-workers. Second, the undisputed evidence shows that the decision to terminate Plaintiff was made six days prior to her complaint of discrimination and her retaliation claim necessarily fails. Third, Plaintiff's anxiety and depression, which were not even known to her employer at the time of her termination, are not per se qualifying disabilities under the OADA. Lastly, and most importantly, the decision to terminate Plaintiff's employment was based on several legitimate and non-discriminatory reasons, chiefly that she had consistently poor work performance culminating in a half-million-dollar blunder that nearly cost OIDS interminably. These reasons are sound and not pretextual and Plaintiff is unable to prove otherwise.

For these reasons, Defendant State of Oklahoma, ex rel. The Oklahoma Indigent Defense System, a statutory agency, is entitled to summary judgment on all of Plaintiff's

claims and respectfully requests this Court enter judgment in its favor and against Plaintiff.

WHEREFORE, for the reasons set forth herein, Defendant respectfully requests that Defendant be granted summary judgment on all claims asserted by Plaintiff, and that Defendant be awarded its costs and attorney's fees reasonably incurred in the defense of this matter.

Respectfully submitted,

 s/Jessica L. Dark
Robert S. Lafferrandre, OBA No. 11897
Randall J. Wood, OBA No. 10531
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile:  (405) 235-2904
rlafferrandre@piercecouch.com
rwood@piercecouch.com
jdark@piercecouch.com
***Attorneys for Defendant OIDS***

29

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2019, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing, which will then send a notification to the below counsel of record:

Geoffrey A. Tabor
WARD & GLASS
1601 N.W. 36th Street, Suite 100
Norman, Oklahoma 73072
(405) 360-9700 – Phone
(405) 360-7902 – Fax
geoffrey@wardglasslaw.com
**Attorney for Plaintiff**

 s/ Jessica L. Dark
Jessica L. Dark